### The Fulton Bank *vs.* Ebenezer S. Beach and others.

Where, in a suit against 12 defendants, an answer was put in and filed, pur-
porting to be the *joint* and *several* answer of *all*, but was in fact not signed or sworn to by *one* of the defendants, and after a replication was filed, proofs taken, the cause set down for hearing, a motion for re-examination of a witness, a denial of the same, an appeal from such decision, and a motion for leave to file a *supplemental bill*, a *separate answer* was filed without leave of the court by the defendant who had not joined in the *original answer*, setting forth substantially the same defences asked to be allowed to be set forth in the supplemental bill, *it was held* that the *separate answer* was filed irregularly, and it was directed to be taken off the files of the court.

*It seems* that where the parties agree that an answer may be put in without oath or signature, it is of course for the court so to order.

An answer should regularly be signed and sworn to, but the signature and oath may be waived by the complainant, and the filing of a replication is evidence of such waiver.

Appeal from chancery. This is an appeal from an order of the chancellor of the 6th August, 1830, directing an answer in the above cause, put in by Ebenezer S. Beach, one of the defendants, *separately*, and filed on the 15th August, 1829, to be taken from the files of the court. The bill was filed in June, 1827. Notice of appearance was given by R. C. Wheeler, one of the defendants, in person, and as solicitor for *all* the other defendants. In October, 1827, an answer was put in, purporting to be the *joint* and *several* answer of *Ebenezer S. Beach*, William S. Dezeng and the other defendants, naming them all; and a copy was served on the complainants' solicitor, with a notice endorsed thereon, entitled "In Chancery; Ebenezer S. Beach, &c. ads. The

Fulton Bank;" that the same was a copy of the answer filed. The answer was sworn to by all the defendants except Beach, had the signatures of the solicitor and counsel of the defendants, but was neither *signed* nor *sworn* to by *Beach*. On the 19th November, 1827, a *replication* was put in to the answer, and at the same time a rule to produce witnesses was given. On the 2d January, 1828, an order extending the time to produce witnesses was served on the complainants' solicitor, entitled "Ebenezer S. Beach, Peter Bain and others, ads. The Fulton Bank;" and on the same day the complainants' solicitor was served with a notice of a motion for the examination of one of the defendants as a witness, accompanied with a copy of a petition purporting to be verified by the oath of the defendant's solicitor, stating that *the cause was at issue;* which motion was made and granted, and the defendant examined. In April and May, 1828, the complainants examined their witnesses. In July, 1828, an order *closing the proofs* was entered, and the cause noticed for hearing for August then next. In February, 1829, the defendants' solicitor gave notice of a motion to be made on the third Tuesday of that month, for the *re-examination* of Mark Spencer, a witness in the cause, which notice was accompanied with a copy of a petition purporting to be sworn to by the defendants' solicitor, and stating that *all the petitioners* named in the title to the petition (and *Beach* was named in the title) had appeared and answered, and that the cause was at issue. The motion was made on the 3d March, 1829; an order was entered denying the prayer of the petition; and on the 13th March, 1829, the defendant *appealed* from the order to the court of errors. In all the papers served by both parties appertaining to the appeal, the name of *Ebenezer S. Beach* was the leading name in entitling the same. On the 28th March, 1829, the defendant gave notice of a motion to *amend their answer*, for the purpose of setting up certain defences not embraced in the original answer; on the argument of which motion the defendants produced and offered to file a *supplemental answer*, purporting to be " the joint and several supplemental answer of Ebenezer S. Beach, William S. Dezeng," and the other defendants, naming them,

and was signed and sworn to by *four* of the defendants, the whole number of the defendants being *twelve*, but was not signed or sworn to by Beach. On the 4th August, 1829, the chancellor .denied the motion for leave to amend the answer; and on the 15th August, 1829, *the separate answer* of Beach was filed, *containing the same defences set up in the supplemental answer*, which was offered to be filed, and which the chancellor refused permission to file. On the 19th August the defendants appealed to the court of errors from the last order of the chancellor. Both appeals were argued at the fall session of the court for the correction of errors, and decided in December, 1829, *affirming* the orders of the chancellor.

On the same day that the *separate* answer of Beach was filed, a copy was *served* on the complainants' solicitor. Three days afterwards a formal notice was given by the complainants' solicitor to the defendant's solicitor, that the separate answer would be treated as a nullity; to which the defendants' solicitor replied by a note, that the same would be insisted on as available in the cause. Notice was given by the complainants' solicitor, that the cause would be brought to a hearing at the *January term* of the court of chancery on the *pleadings and proofs*, and a like notice for the same term was given by the defendants' solicitor, that the cause would be brought to a hearing, on the part of the defendants, upon the bill of complaint, and the *separate answer thereto of the defendant Ebenezer S. Beach*, and upon the pleadings and proofs as to the other defendants; a similar notice was given by each party for the *May term*, 1830, and at the same time a notice was given by the complainants of an intended motion at the same term, that the *separate answer* of Beach be *taken off the files of the court*. This motion was resisted on the following grounds: The solicitor for the defendants made affidavit, that *not until the 5th August*, 1829, when preparing a case for the court of errors on the first appeal, did he discover that the defendant Beach had not signed and made oath to the original answer, and that until then he had erroneously supposed that *all* the defendants had signed and

sworn to the same; that the answer filed was drawn by the *counsel* for the defendants residing in Albany, and transmitted to him, the *solicitor*, residing in New-York, to procure the signatures and oaths of two of the defendants then in N. York, and to sign and swear to the same himself, he being one of the defendants; and that the answer was accordingly signed, sworn to and filed. That on discovering that Beach had not signed the answer on file, he prepared a separate answer for him, which, on the *seventh* day of August, he delivered to a co-defendant to be sent to *Rochester*, where Beach resided, to be signed and sworn to by him; that on the *fourteenth* day of August the answer was returned to him, and on the *fifteenth* it was filed; that he did not learn the decision of the chancellor of the *fourth* of August, denying the motion to amend the answer, until the *eighth* of August, after the separate answer had been prepared and sent to Rochester. It was further shewn, that the matters in controversy related to certain promissory notes negotiated by two mercantile firms of the names of *Keeler & Rogers* and *Keeler & Mather*, who had failed and assigned their property to *Peter Bain, Ebenezer S. Beach* and others, and that the parties to such assignment were the defendants in the suit in chancery. *Bain* took the principal management of the controversy respecting the notes, and procured the answer to be drawn by counsel in Albany. Beach was not there at the time, no communication was had with him in reference to the answer, and he had no agency whatever in preparing or putting in the same. Beach himself made affidavit that he had never signed or sworn to the answer filed in October, 1827, that he never adopted the same as his answer, or authorized his solicitor to adopt it, that he never saw it, read it, or heard it read, and that he never instructed or authorized Bain or any other person to put in or waive for him an answer in the cause.

On the 6th August, 1830, the chancellor made an order directing the *separate answer* of Beach to be taken from the files of the court. The following opinion was delivered by the CHANCELLOR:

ALBANY,
Dec. 1830.

Fulton Bank
v.
Beach.

"There can be no possible doubt that the filing of the second answer without the leave of the court was irregular, and the same was a nullity. The court, for the purpose of preventing irregularities, and to preserve its files from being encumbered with improper papers, prohibited answers from being filed without oath, except under an order of the court. But an answer thus filed was good, as against the party who put in the same, and it did not lie in his mouth to complain of his own irregularity, or that of his solicitor. If the complainants had known of the answer not being sworn to, they might have treated it as a valid answer; and if they chose to treat it as such, it would have the same effect in favor of the defendants, as if it had been sworn to by all. Whether in this particular case their solicitor did know of the fact, is therefore immaterial, though I presume all parties supposed, for nearly two years afterwards, that it had been actually sworn to by all the defendants, whose answer it professes to be. As it was a joint and several answer, if it was irregular as to one of the defendants, it was irregular as to all. There is no pretence that it was not precisely such an answer as Beach would have consented to, if it had been presented to him at that time, instead of being put in by his co-defendant, who was also his solicitor; though subsequent events have made it of importance to all the defendants now to alter their defence. At the time this last answer was put in, the other defendants had the same right to take advantage of their former irregularity as Beach himself. The testimony had been taken for all the defendants, and the cause was in readiness for hearing as to all.

This irregularity has not been cured by any act of the complainants. Even if the subsequent appeal was not an absolute abandonment of this answer, they have done no act founded on the answer, by which it was treated as a regular proceeding. It was in that stage of the proceedings absolutely void, and could not be made good without some positive act of the complainants, affirming its validity. If they had filed a replication thereto, neither party could have taken any proofs thereon, without a special order of the

court, as the proofs were regularly closed. And the court of errors, on the appeal which was then pending, have decided that they cannot be opened. It was therefore not material, whether they moved to take it off the files immediately after it was placed there, or at a later period. If this motion had not been made, the paper thus filed could not, on the hearing, have been treated as any part of the pleadings in the cause. And after the decisions of the court of dernier resort on other questions in this cause, founded on the presumption that the cause was in readiness for hearing on the pleadings and proofs as they formerly stood, this court could not have treated this as a valid answer.

As this paper is improperly on the files, and ought not to remain there to produce confusion in the records, the motion that it be taken off the files must be granted. But as the same thing would have been done at the hearing, on a mere suggestion, when all the facts were before the court, I shall not charge the adverse party with the costs of this application.

The defendants *appealed*, and the appeal here was argued by

*B. F. Butler*, for the appellants, and by

*J. Hoyt & D. B. Ogden*, for the respondents.

The following opinions were delivered :

By Chief Justice Savage. The question is, whether the defendants were entitled by the practice of the court to retain the paper in question on the files and rely upon it in their defence. It is purely a question of practice, and it is not necessary, perhaps it is not proper, to look into the merits of the defence thus attempted to be set up—the merits were discussed upon the former appeals.

By a rule of Lord Hardwicke of April 27th, 1748, all answers were required to be signed and sworn before the master. In the case of ———— v. *Lake*, 6 *Ves.* 171, a motion was made on behalf of the defendant for leave to file an answer,

without being signed, under peculiar circumstances, which Lord Eldon at first refused; but the motion being renewed, and the plaintiff's counsel desiring that it might be done, the clerk was directed to receive it upon the consent of the plaintiff. In *Codun* v. *Hersey*, 18 *Ves.* 468, a motion was made by the plaintiff, as of course, that the defendant may be allowed to put in his answer without oath or signature. The lord chancellor said, strictly the defendant should consent; and made an order, that upon the motion of the plaintiff the defendant be at liberty to put in his answer without oath or signature. The register, it seems, was not satisfied with the order of the court; thinking perhaps that he understood the practice better than the chancellor, he refused to enter it; and it was again mentioned by counsel, saying that it was requiring consent for a man to do what he might do, if he pleased; and the chancellor confirmed his order as pronounced, notwithstanding the doubts of the register. In *Doue* v. *Read*, 2 *Vesey & Beame*, 310, a joint and several answer was taken by commission; in the title to which the names of John Doue and Maria his wife appeared, who declined joining therein, and put in a joint answer with other defendants. A motion was made that the names of Doue and wife might be struck out from the title of the answer to which they refused to swear. The plaintiff consented to the motion, and the order was made accordingly; but Mr. Hunt suggested as *amicus curiæ* that the course is, that the answer should be received as the answer of those who swore to it. This suggestion however was not adopted, and the names of the defendants who refused to join were stricken out.

These are the cases relied on by the defendants, and they seem to me to establish this position : that if the defendant and plaintiff agree that the answer may be put in without oath or signature, it is matter of course for the court so to order. In *Harris* v. *James*, 3 *Brown's C. C.* 399, a motion was made to receive an answer as the answer of three, though it was drawn for five; but the motion was denied, the Lord Chancellor Thurlow saying, if such a practice prevailed it

was wrong. In the case of *Curling* v. *Marquis of Towns-hend*, 19 *Ves.* 628, the answer to the original bill was put in without oath or attestation of honor, which by a peer is a substitute for an oath ; and Lord Eldon said that the defend-ant gave the same authority to the court to look at the cir-cumstances denied or admitted, for the purpose of civil jus-tice between the parties, as if put in upon attestation or oath. One motion in that case was for leave to file a supplemental answer, which the chancellor discussed upon the merits, but concluded by saying, that he dare not lay down a principle which would permit an answer, after the lapse of two years, to be altered in effect from one end to the other. *Cooper* in his *Treatise on Pleadings, p.* 325, says : " An answer is al-ways on oath unless the plaintiff chooses to dispense with it, and then the court will order the answer of the defendant to be taken without oath." The rule of our court of chancery is the same as in England, and the practice proper under the one is so under the other. We have not been referred to any cases in our court upon the point ; but upon the ground of *laches*, Chancellor Kent adopted the rules of our courts of law, that a defective proceeding may be cured by the neglect of the opposite party to complain of it as soon as it comes to his knowledge. *2 Johns. C. R.* 249. *5 id.* 192.

It seems to me therefore as the result of the cases refer-red to, that although the answer should have been sworn to by all the defendants named in the title, yet the oath and sig-nature may be waived by the plaintiffs ; and the plaintiffs in this case having replied to the answer admitting it to be the answer of all the defendants, would have been irregular af-terwards to have treated it otherwise, and to have taken their bill as against Beach *pro confesso.* Had they done so, there can be no doubt they would have been concluded by their admission, in consequence of their proceedings recognizing it as the answer of all, and the judgment would have been set aside for irregularity. The defendant Beach seems to me to have recognized the answer as his by the acts of his soli-citor, and cannot now disavow it. The chancellor therefore decided according to the usual practice of his court.

The merits seem to be the same, so far as they are disclosed, as those in the two former appeals ; there is nothing in them which can induce a different decision now from that heretofore made.    My opinion is, that the order appealed from ought to be affirmed.

By Mr. Senator MATHER.    The first question which naturally arises on a review of the facts of this case, relates to the legal effect of filing the answer, such as it was, on the 9th of October, 1827.

It will be remembered that the answer then filed was not signed by the defendant Beach ; he had not sworn to it ; in fact he had never seen it nor given any directions to authorize the filing of such an answer ; and, as he states on his oath, if he had seen it, he never would have signed or sworn to it or consented to its being filed.    He contemplated interposing other defences than those which were set up in the answer first filed ; had conversed with his solicitor respecting those other grounds of defence, and left the whole matter in such a state, that he had reason to expect that the defence would be so conducted on the part of his solicitor that all those grounds of defence would be rendered available to him at a proper time.

That the answer filed October 9th, 1827, became and was the answer of all those who signed and swore to it, is now conceded on both sides.    It was nevertheless, even as to those defendants, in some respects, an irregular and imperfect answer. It purported both in the caption and body of it to be the joint and several answer of all the defendants ; whereas, in point of fact, all the defendants had not signified their assent to it, neither had all bound their consciences by it in the manner required by the rules and practice of the court of chancery.    This irregularity, however, it did not lie in the mouth of those defendants who became parties to that answer to allege ; for that would be to take advantage of their own wrong.    The case of Cook v. Westall, 1 Maddock's Ch. R. 265, is however an authority to show, that if the complainants, on the coming in of the answer of 9th October,

1827, had wished to avail themselves of the irregularity, they might have done so; and on their application, the answer would have been struck from the files, and that for no other reason than that it purported to be more than what it was; but the complainants did not see fit to avail themselves of the irregularity of the first answer. They were not misled; the copy served upon them by the adverse solicitor included copies of all the acual signatures and jurats. Indeed, there is no pretence of any attempt or design on the part of the defendants to overreach or mislead in practice. Neither do the complainants now seek to avoid the force of the first answer as the answer at least of all the parties to it. The defendants themselves who signed and were sworn, it appears, would be very happy to be let off; but the adverse party, and the chancellor and this court have agreed unanimously to hold them bound by it.

The next step, in the order of the investigation, is to ascertain whether the answer filed on the 9th of October, 1827, became, on its being filed, the answer of Beach, the party who never saw, never signed and never swore to it. I am satisfied, for myself, that it did not become his answer, for the following reasons: 1. The reason given in the case of *Cook* v. *Westall*, to show that such an answer on application of the complainant might be struck from the files, and the authority of that case as a precedent established by an enlightened court of equity. The answer in that case was ordered by the lord chancellor of England to be struck from the files, because it purported to be something different from and more than it actually was. The matter of the answer was not objected to; but it purported to be the joint and several answer of two defendants, whereas only one had signed and sworn to it. Hence the conclusion, it was not what it purported to be. And so here. The answer filed 9th October, 1827, purported to be the joint and several answer of all the defendants, whereas a part only of the defendants had signed and sworn to it. Hence the conclusion as in the case cited. It was not what it purported to be. It was not the answer of Beach. If by being filed, such an an-

ALBANY,
Dec. 1830.

Fulton Bank
v.
Beach.

ALBANY,
Dec. 1830.

Fulton Bank
v.
Beach.

swer were to become the answer of the party omitting to sign and swear to it, it would be quite inconsistent to strike it from the files for a defect which, on such a construction of the effect of filing, would be altogether immaterial. *See also Parke v. Christie, &c.* 1 *Younge & Jarvis' Rep.* 533.

2. Another reason which convinces me that the first answer filed in this cause is not to be considered to have become thereby the answer of Beach, is found in the case of *Doue* v. *Read,* 2 *Vesey & Beame,* 310. In that case a joint and several answer was taken by commission, in the title to which the name of Doue and wife appeared, who declined joining therein, and put in a joint answer with the other defendants. Mr. Lyon, the solicitor for the defendants, supposing (as I understand the case) the answer, which purported to be joint and several as to all the defendants, to be irregular and defective for want of the signature and oath of Doue and wife, moved to have their names struck from the title of the answer. To this the plaintiff consented, and, for aught that appears, it would have been so done but for the interference of Mr. Hart, (*amicus curiæ,*) who suggested that the course was, that the answer should be received *as the answer of those who swore to it.* The vice chancellor made order accordingly, by this mode arriving at the same result which both parties consented to without embracing the further irregularity which the motion contemplated, of altering an answer after it had been sworn to. This result corresponds with the view I have taken of the legal effect of the filing of the first answer in this cause. It shows that an answer purporting to be the answer of all the defendants, jointly and severally, unsigned and unsworn to by some or one of them, though irregular and defective, by consent of the party who only could object to it, may be received as the answer of those who had actually signed and sworn, *and of no more.*

3. A third reason which has weight in convincing me that the answer in question did not become the answer of Beach is, that it was not so received and filed in fact. The assistant register in New-York, it appears, by whom the answer alluded to was received, "*filed*" it expressly "*as the answer*

*of all the defendants except Ebenezer S. Beach,*" and he certifies to us that such is the uniform practice of the register's office under his care. The counsel for the respondents, on the argument, affected to consider this as a reason of very little weight. I think differently. The register is an officer holding a highly responsible station, selected to discharge his trusts by the chancellor himself. The matter in question was a matter of practice which came within the sphere of his appropriate duties. It was therefore a matter of which ignorance or mistake in him would be inexcusable ; and when I find, in addition, that his practice in this particular case has the sanction of as high an authority as the English court of chancery, I feel myself bound to allow a good deal of weight to his.doings, in settling a question of chancery practice closely connected with them.

4. A further argument to shew that the answer filed the 9th October, 1827, did not become the answer of Beach, is found in the fact that the rules of the court of chancery of this state expressly preclude the possibility of giving it any such construction. By the 16th rule then in force, it is ordered " that all answers, whether taken with or without oath, or by consent of parties, shall be taken before any one of the masters of this court or before commissioners, and that no answer shall be filed, unless so taken, without special order for that purpose." The answer in question not having been taken, as to the defendant Beach, in the manner provided for by this rule, it could not become his answer. As regarded his interests, rights and liabilities, within the express provision of this rule, it was no answer at all. Its validity as an answer for the remaining defendants was settled on other principles, which have been before discussed.

The chancellor admits, in assigning his reasons in this cause, that the court have prohibited answers from being filed without oath, except under an order of the court. The practice of the chancellor in this respect accords with that adopted, I believe, by every other court of equity. Numerous cases were cited on the argument, from the courts of equity in England, to shew the importance there attached to

the oath of the party to an answer.  In —— v. *Lake*, 6 *Ves.* 171, under special circumstances, (the defendant being an officer of the army, and having sailed for India, by mandate from his sovereign, immediately on being served with subpœna,) and by consent, (all of which was made to appear on special application to the lord chancellor,) the clerk was ordered to receive the answer to a bill of foreclosure without being signed, and of course unsworn.  In *Harding* v. *Harding*, 12 *Vesey*, 159, an order was made that the answer of two defendants be taken unsigned and unsworn, they being out of the jurisdiction of the court, and their father swearing that he had authority to act for them.  In *Codner* v. *Hurry*, 18 *Vesey*, 468, the lord chancellor, on motion, ordered that the defendant be allowed to answer without oath or signature, observing that the order secured the consent of the defendant, he being in the country ; but where the defendant is abroad, the court requires some authority to shew that he is willing. In applying these principles to the case before us, we find that the answer which the complainants endeavor to establish as the answer of the defendant Beach, has not, as it respects that defendant, a single quality which is necessary, by the rules and practice of all equity courts, and by the express rule of our own court of chancery, to make it his answer. He never saw it, never signed, never swore to it, never ordered it to be put in ; and if he had seen it, such as it was, he says under oath he never would have consented to it in any manner or shape whatever.  I confess I cannot see why it might not as well be held that any other answer in any other cause is the answer of the defendant Beach in this cause, as that the answer of the other defendants, filed the 9th October, 1827, is his answer.

But the chancellor informs us that the requirement of an oath to an answer was made for the purpose of preventing irregularities, and to preserve the files from being incumbered with improper papers.  I can understand this in only one sense which will accord with my views of the subject under consideration.  An oath is required to an answer to prevent irregular, i. e. *unsworn answers*, from being filed,

ALBANY,
Dec. 1830.

Fulton Bank
v.
Beach.

and to preserve the files from being incumbered with improper papers, i. e. *unsworn answers.* Still, this is no more than to say that an oath is required to an answer in order that an answer might not be without oath. If the chancellor intends to intimate that the oath required to an answer is a mere matter of form, not affecting the rights or liabilities of the party, it certainly cannot be necessary for me to occupy time to controvert a proposition so much at variance with a fundamental principle of equity jurisprudence. The requisition of an oath from the party, in specified cases, is one of the grand features peculiar to courts of equity. It is one of the most energetic means by which those courts search the hearts of the litigating parties. By it they probe the conscience, and if that faculty is not dead to all moral sensibility, they thus arrive at truth by means at once the most easy, certain and expeditious. It is not improbable that the fear so justly excited by the known existence of such a tribunal, by its silent operation only, may have prevented more fraud and litigation than even those courts have had occasion to develope. The oath is then emphatically a matter of substance, and not of form ; and courts of equity, more than any other courts, profess to be and are governed by matters of substance, and not of form.

" But an answer thus filed," (i. e. unsigned and unsworn,) the chancellor says, " was good against the party who put in the same." There are several points of view in which this position appears to me to be incorrect. In the first place it appears entirely to supersede the rule of the court of chancery which requires an oath. If the parties may thus trifle with the rules of the court, of what use is it to have rules ? and besides, the rule itself provides, and so also the several cases which I have cited show, that not the parties, but the chancellor himself is to say when and on what special grounds the oath may be dispensed with, and that in order to obtain such dispensation, the parties shall not agree among themselves, but come before him with a statement of the reasons for such an anomalous departure from the usual course of equity practice. By this wise and salutary provision, the

chancellor is enabled to protect the files of his court from irregularity and incumbrances. If the protection of them had been left, on the contrary, as by the dicta under consideration the chancellor would seem to leave it, to the agreement of the parties or their solicitors, evinced not by any express stipulation, but collected as matter of inference only from their carelessness or omissions, I should think such an application of the rule adapted to produce confusion and destruction rather than regularity and protection of the files of the chancellor. Again; in order to give any force, in its application to the present case, to the chancellor's observation that an unsworn answer is good as against the party who put it in, it is necessary to take it for granted that the putting in such answer was the result of some positive act of the defendant; whereas it is manifest that the defendant Beach had no agency whatever in putting in the answer which was filed the 9th October, 1827.

The chancellor adds: "It did not lie in his (i. e. Beach's) mouth to complain of his own irregularity or that of his solicitor," referring to the first answer. In reply to which, I would observe, he does not complain of it; he has not been guilty of any irregularity, nor has the solicitor, in regard to any answer of Beach. The rules and practice of the court of chancery prescribe sufficiently the time within which an answer may be put in; and in this respect they follow, by analogy, the practice adopted in courts of law. An answer or plea comes in season at any time before the default is entered for want of it. If the complainant or plaintiff wishes to close that unlimited time, the rules of both courts have provided him the means. Let him enter the default of the party, and in equity obtain an order to take the bill *pro confesso*, and at law assess his damages before the clerk or by a writ of inquiry. The only irregularity of the answer filed on the 9th of October, 1827, was, as we have above shewn, that it purported to be more than it was. That irregularity was cured, not by any act or omission of the defendants or any one of them, but by the omission of the complainants to object to it. The defendant Beach never complained of any irregular-

ity of that answer. If he had complained of it, treating it as an answer filed by his direction, imperfectly communicated or imperfectly understood, there would then be some ground to charge him with putting it in, or causing it to be put in by his own acts. But he does no such thing. He only disclaims its being his answer ; and that I think he had a right to do, because he had never done a single act which the rules and practice of the court required to make it his. The bill had not been taken against him as confessed ; and as soon as the discovery was made that he had not answered, an answer was immediately prepared for him, signed, sworn to and filed, in all respects according to the rules and practice of the court.

It is readily conceded that the interposition of an answer at so late a day must have been productive of some inconvenience and delay ; but it is much more tolerable that delay and inconvenience should occur in the progress of a cause, than that a party should have his rights made a sacrifice to mere forms. It is much better that the complainants should be subjected even to the further hazard of meeting another and perhaps more substantial answer, (which certainly cannot avail the defendants any thing unless proved to have the sacred impress of truth,) than that any defendant should be tried and condemned unheard. It ought to be observed, also, that the unpleasant state of the cause on the coming in of the answer of Beach, if it was a fault at all, was no more the fault of one party than of the other. The defendants and the solicitor who filed the first answer were guilty of no fault but that which was waived, as we have seen by the omission of the adverse party to take advantage of it. The complainants, besides waiving the informality of the first answer as the answer of those who signed and swore to it, omitted to take advantage of Beach's neglect to answer at all by taking the bill *pro confesso* against him, which they might have done. They omitted to apply to the chancellor for an order that Beach put in his answer on pain of contempt of court, which they might also have done. They thus left the door open for him to answer when he pleased, and are the last persons

in whose mouth it should lie to complain of his answer coming late. That answer came into existence only because the complainants neglected to shut the door against it. It came late only because the complainants neglected to expedite its arrival in a way which the rules of the court amply provided for.

There is another point of view in which the mode of prosecuting this suit on the part of the complainants is somewhat open to observation. They could not have taken measures at any time against Beach, for want of an answer as above suggested, without putting him by their own act in a situation, if he chose, to avail himself at once of the same matters of defence which he at last embodied in his answer. He states in his affidavit to resist the motion before the chancellor to strike out his answers, that he always had those matters of defence in contemplation, and that he supposed, until the preparation and filing of the last answer, that these matters of defence had been set up. Suppose, then, that the complainants had entered an order against him to take the bill *pro confesso;* this would have apprised him of his then recent forgetfulness to put in his answer, and there is no court of equity that would not set aside a default under such circumstances, and let the party in to answer on payment of the costs of the default. Suppose the complainants had obtained an order that Beach put in his answer by a short day, on pain of contempt of court; this, too, would have drawn forth at once the answer so much dreaded.

If the complainants' solicitor or counsel knew of the omission of Beach's signature to the first answer, there would be ample ground to attribute their omission to take the steps suggested, to the consideration that it was greatly to their interest to retain the cause in its then present state as to pleadings, and to carry it on to a decree in that state, rather than provoke the answer of Beach by any act of theirs. If such motives existed, they were evidence of unfair practice; and in a case in which it could possibly be suspected that such concealment existed, it was the bounden duty of the complainants' solicitor to have stated fully and fairly at what time

they first discovered the omission of Beach's signature. I have in vain searched the affidavits on which the motion to strike Beach's answer from the files was grounded to find such statement. The matter is entirely evaded. Mr. Ward, the solicitor for the complainants, swears that it was ascertained subsequent to the filing and service of the copy of the answer, and adds "*as will be hereinafter mentioned.*" I have carefully looked through the affidavit, but have not found that promise redeemed. By comparing a date of the jurat of an affidavit of Mr. Hoyt, the partner of the solicitor, viz. 4th April, 1829, with that part of the affidavit in which he gives the date of each jurat appended to the original answer, it is rendered highly probable that he knew of the omission at least four months before it came to the knowledge of the defendants. Whether it came to the knowledge of the complainants' solicitor at any earlier date, we are left without information.

It was suggested on the argument, on the part of the respondents, that Beach had adopted the answer which was filed 9th October, 1827, by the acts of his solicitor in treating it as his answer, and by appealing from the two first orders of the chancellor. There are several answers to this suggestion, which are perfectly satisfactory to my mind : 1. All the acts thus done were done in ignorance of a material fact, the knowledge of which was necessary, in order to show that in doing the acts the party or the solicitor intended to adopt or appropriate to himself the first answer. Where it is sought to bind a party by construction of law arising from his own act, the act must be such as evinces an intention not only to do the particular act itself, but to involve himself in the results supposed to flow legally from such doings ; and in order to evince such intention, it is necessary that the party should have knowledge of the facts on which the supposed legal results are based. This principle is well illustrated by the case of an endorser promising to pay a note, after being discharged from his original liability by the omission of the holder to give him notice of non-pay-

ment by the maker.  It is well settled that such promise is not sufficient to restore the liability of the endorser, unless made with full knowledge of the fact that he had been legally exonerated from his responsibility by the want of notice. 2. In regard to the appeals, they were commenced before it was known that Beach had not answered; and afterwards I cannot see that it was within his power, being only one of many appellants, to discontinue them ; neither in fact was it necessary for him to discontinue, for as the orders appealed from purported to include and bind him, he was at liberty to appeal though he had not answered.   Those appeals had in view the re-examination of a witness after proofs closed, and to permit all the defendants to amend the answer.   This court unanimously affirmed the chancellor's orders, denying both those motions, on grounds which I think perfectly consistent, and have adopted in this opinion.   The result of those appeals can therefore furnish no ground of argument against granting the relief sought by the present appeal. 3. The rules of the court of chancery, as I have above shewn, make an oath indispensable to the validity of an answer, as matter of substance and not of form, except in special cases in which the chancellor may personally make order to the contrary on the coming in of the answer.   It is therefore impossible, in the nature of things, that the acts of any third person can give legal force to an answer, nor can any act of the party himself, short of his oath, unless the chancellor on the coming in of the answer sanctions the filing of it without oath.

There is a marked and broad distinction between the powers of attorneys in courts of law and solicitors in courts of equity in representing their clients.   The former courts receive all pleadings under the signature of the attorney, and the client is bound by it ; although even those courts, enforcing the rigid principles of the common law, are always liberal to relieve the client when his attorney has mistaken either the law or the facts.   In courts of equity, which were constituted to mitigate in many respects the rigor of the common

law, a solicitor has no authority whatever to put in an answer for his client without oath.    This I hold to be one of the peculiar and invaluable characteristics of a court of equity. There is a good reason for the distinction.    Courts of equity probe the conscience of the party.    This they could not do by taking his answer from the mouth of his solicitor.    He must personally understand the substance of his answer ; he must deliberate on it ; he must appear in the master's office and add to all the sanction of his oath.    Every step in this process is wisely calculated to awaken the vigilance of the party to discover and manifest his rights, and to protect him from the consequences of mistake, or ignorance, or inadvertence on the part of his solicitor.    If his conscience is to be bound by an adamantine chain, it is well for the party that he is himself to do the principal work of forging it.

The case of *Sidgier* v. *Tyte,* 11 *Vesey,* 202, has some bearing on the questions before us.    The defendant was brought up on a *habeas corpus* for want of an answer.    The plaintiff moved that the bill be taken *pro confesso* against him, suggesting a difficulty from the fact that an answer had at last been filed, but the costs of the contempt not paid.    The lord chancellor remanded the defendant, and ordered the plaintiff first to move to strike the answer from the files and then to renew his motion to take the bill as confessed ; which being done, the lord chancellor still refused the motion, on discovering that the plaintiff had taken an office copy of the answer, whereby he was precluded from treating it as a nullity.    The doctrines plainly deducible from this case are, that a defendant is not precluded from filing an answer at any time, unless the plaintiff has either entered his default or taken steps to bring him into contempt for want of an answer ; and that when a defendant puts in an irregular answer, as being under contempt at the time, the plaintiff is also precluded from alleging its nullity if he does any act to sanction it.    The latter position is in no respect relevant to the first answer in this cause, except to show that the plaintiffs were precluded from treating it as a nullity, as the answer of those who signed it by their omission to object to it.

The first position shows that Beach's answer, filed 15th August, 1829, came in season, the complainants having taken no steps to preclude it or to bring him into contempt. The case of *Griffiths* v. *Wood*, 11 *Vesey*, 62, is still more in point. The defendant filed an answer to a bill of *Edward* Griffiths, the plaintiff's true name being *Edmond* Griffiths. The lord chancellor refused a motion of the plaintiff for a sequestration for want of an answer, and subsequently granted a motion on the part of the defendant to take the answer from the files, the defendant having after the first motion filed a new answer, in which he stated his defence differently in substance from the first answer. The filing of the new answer must of course have been approved of by the court. The lord chancellor thus acknowledged that the defendant might take advantage of his own mistake of the name in the first answer, to file a new answer, in which he corrected not only the misnomer of the plaintiff, but the substance of the answer itself. This case goes much farther in liberality of practice than the defendant Beach wished the chancellor to go. In fact I think I have shown that Beach had not made any mistake, had not committed any irregularity, and had no occasion to ask the favor of the court. The plaintiffs had taken no steps to preclude his answer, which came in on the 15th day of August, 1829, and he only asks that the chancellor himself may not do that which the adverse party might have done, but neglected to do. The chancellor, in my opinion, could not do it without transcending his own rules, violating all the precedents, and what is more, denying to a party litigating in the court his most undisputed and essential right. The lord chancellor in *Griffiths* v. *Wood*, proceeds to say : "The plaintiff must either say, it is an answer and keep it, or that it is not an answer." This only proves that if Beach had signed and sworn to the first answer, the court would have suffered the plaintiffs to hold him to it, notwithstanding it may have embraced some mistakes. But Beach was not guilty of any mistake in the first answer. The chancellor, however, is obviously mistaken in saying that through inadvertence it was not signed by Beach. It

might perhaps be just to say, that his solicitor having drawn it as the joint and several answer of all the defendants, filed it without his signature and oath through inadvertence. But when it is asked why did Beach not sign it? there are two obvious answers which have nothing to do with inadvertence. In the first place, being at least two hundred miles distant from the nearest place where the answer was signed and sworn to by any of the defendants, he could not have joined in it if he would; and secondly, he states upon his oath, that if he had been present and had seen it, he would not have joined in it on account of the errors of fact which it contained.

The lord chancellor proceeds in *Griffith* v. *Wood*, to say: "There are many instances of permitting answers to be taken off the file and re-sworn when there was a mere mistake in the name; but where the defendant himself has discovered that there is contained in it what is false, innocently, according to his representation, disputed however by the plaintiff, the court cannot put the defendant in a worse situation than that in which they find him: ordering him to do an act which would expose him to an indictment for perjury." This might be used as an authority to shew, that if Beach had signed and sworn to the first answer, he could not be relieved from the mistakes it might contain, on his motion, provided the complainants were satisfied with it. But if any weight is due to the case as a precedent, it proves a great deal more; it establishes a very clear and sensible rule, that when a party is brought before the chancellor on motion on a charge of irregularity, the chancellor cannot by any act or construction of his own, place such party in a worse situation than that in which he finds him. Let us inquire, then, in what situation did the chancellor find Beach when the respondents moved to strike his answer from the files? He found that Beach had put in an answer at a late date, but in consequence of the complainants having omitted to take proper steps to preclude a late answer. He found that an answer had been filed at a much earlier day *as the answer of all the defendants except Beach;* an answer which was in

some respects irregular, but which irregularity also was cured by the omission of the complainants to object to it. He finds also, that in the interval between the two answers, the parties, solicitors and counsel had been groping in darkness as to the actual situation of the cause in regard to one of the defendants; but that the defendant filed his answer, and brought every thing to light as soon as his omission to answer was discovered, and before any steps were taken to preclude him from answering. The complainants then moved the chancellor to strike out the last answer, and thus in effect to restore a state of total darkness. But the rule is, that the chancellor cannot by any act or construction of his, put a party in a worse situation than that in which he finds him. Clearly then he had no right to strike out Beach's answer. Within the very words as well as spirit of the rule of the lord chancellor, he could not order Beach to swear to the first answer, for that would be to order him to do an act which, as he alleged, would expose him to an indictment for perjury. Neither could he allow the respondents to say that the first answer should be constructively made the answer of Beach; for that answer had not his signature or oath to make the case parallel to *Griffiths* v. *Wood*, in that respect. What then could the chancellor do? The answer is obvious. He could and ought to have done precisely what the lord chancellor did in the case of *Griffiths* v. *Wood*. He could have suffered the answer last filed to stand, and thus have left Beach in no worse situation than that in which he found him. This would have consisted with the right of the party as contradistinguished from the exercise of arbitrary power; this would have been consistent with the spirit and principles of equity in the common acceptation of that word, the only sense in which a court of equity is the pride and ornament of our system of jurisprudence.

There is another view of this subject which is entitled to serious consideration. The answer of Beach was filed on the 15th of August, 1829. No step was taken by the complainants to set aside that answer until May term, 1830, of

the court of chancery. Here was an interval of nine months, during which time both parties had been taking other steps in the prosecution and defence. Both had noticed the cause for a hearing before the chancellor at the preceding January term, and the defendants' notice was as well for argument on bill and answer as to Beach, as on pleadings and proofs as to the other defendants. I have satisfied myself that Beach's answer was in no respect irregular; but admit, for argument's sake, that it was in some respects irregular, the omission of the adverse party to object to it in a legal manner for so long a time, it appears to me, would entirely remedy such irregularity. To this effect is the case of *Brasher* v. *Van Cortland,* 2 Johns. Ch. R. 242, where Chancellor Kent observes: "The party who wishes to avail himself of an irregularity in the proceedings of his adversary must make the objection the first opportunity after he has knowledge of it, or has sufficient information to put him on inquiry as to the fact. This court is governed by substance, and not by forms." In *Skinner* v. *Dayton,* also 5 Johns. Ch. R. 191, a party had not received due notice of the examination of witnesses before a master, and yet had suffered 10 months to elapse before applying to the court to suppress the testimony. Here also Chancellor Kent refused an order to strike out the testimony, on the ground that an irregularity of practice or defective notice will be cured by a neglect to complain of it. But it is objected to all this, that "the answer of Beach was a nullity, and therefore it was not even necessary to move to strike it out, as the court would not regard it on the argument." Thus did not the lord Chancellor, however, in the case of *Sidgier* v. *Tyte,* above cited. He held the party bound in that case to move to strike out the answer, notwithstanding it was pronounced by him to be a nullity; and when subsequently it was moved to strike it out, he refused the motion, because the adverse party had merely taken an office copy of it. As this took place while the defendant was in custody on process for contempt, it would appear that all must have transpired within a very few days. In the case which is now before us for adjudication, the complainant

having been served with a copy of an answer, which he sees fit to call a nullity, with full notice that it would be relied upon, suffered nine months to elapse before moving to strike it out. The acts and circumstances, therefore, which might be relied upon to preclude the complainants from treating Beach's answer as a nullity, are much more strong and unequivocal than the single act of taking an office copy of the answer in the case cited.

It is not necessary to indulge in any speculation as to the probable event of this cause on the last answer, if allowed to stand. One thing, however, appears quite certain, if we may judge from the resistance which that answer seems to have excited, and the effort made to persuade this court to adopt a technical rule of construction which shall put into Beach's mouth an answer which he never uttered, and language which he declares on oath was foreign from his intention, we must allow that the charge of nullity has no respect to the contents of the answer itself. It would seem to be admitted that there was substance enough in the answer, and that the only objection was that it came too late. Assume, for argument's sake, that this objection is well taken. It is manifest it involves a principle as much at war with the objection itself as with the answer against which it is raised ; for it may well be said, a party who has slept nine months on an answer comes quite too late to allege that such answer was out of season. If the charge of nullity in relation to an answer or other pleading in equity were one of such easy application, I see not why the objecting parties might not have sheltered themselves under it in the two cases decided by Chancellor Kent, and in any other case, as well as in the case before us. The charge of nullity is in truth one of last resort, and is only applicable to cases where the nullity is something manifest and palpable, as where an answer is unsigned and unsworn ; and if the answer last filed in this cause had possessed those negative qualities, I acknowledge it would have been a nullity, as the first answer was, so far as concerned the defendant Beach, for those reasons.

My opinion, therefore, is that the order appealed from ought to be reversed.

By Mr. Senator OLIVER. The chancellor ordered the answer of Beach to be taken off the files on the ground of irregularity, and it therefore becomes necessary to inquire whether the filing of this separate answer of Beach was irregular or not. It is now an admitted fact that Beach had not in fact answered, and that no order had been taken to preclude him from answering, but that all parties have gone on as if all had answered. The respondents must have known that Beach had not answered. They had the answer before them, and if any thing has been wrong, it is that the respondents have gone on against a party who has never been in court. There is no proof that Beach ever adopted the answer of the other defendants as his own. He swears that he always meant to insist upon the defence of usury, and that the discount of the note in question by the Hudson Insurance Company was illegal, being unauthorized by their charter, and against the restraining act; that he so instructed his solicitor, Wheeler; and that he believed the same defence had been set up by the other defendant, until he discovered the contrary in August, 1829. Mr. Wheeler swears he drew an answer embracing the above defences, and sent it to Albany to be sworn to; it was mislaid in the post-office at New-York until another answer was drawn and filed, without Beach's knowledge or concurrence. If this be true, there is no propriety in saying that Beach adopted and acquiesced in an answer which he never saw or authorized, and from which he dissented by filing the answer now the subject of this motion. I do not see how the respondents were misled; they had the answer before them, with the register's note upon it, and is it not a little strange that they did not compel an answer or take the bill *pro confesso?* The truth of the matter is, and so the facts appeared before this court on the former appeal, that Mark Spencer, the president of the Hudson Insurance Company, was a director of the Fulton Bank, and had a decided agency in the negotiations of both boards, and it is to be presumed that he perfectly understood the defences urged in this answer; and the interference is not unreasonable, that with such understanding the respondents were not disposed to call on Beach for his answer. This, to me, is

the true reason why the respondents have gone on without Beach's answer, and are now so anxious to exclude it. The legal power of the chancellor depends upon the justice of the act to which it is applied; and the question here is, did Beach concur in the answer filed by the other defendants? His name is in the answer; but does that prove his assent to it, and rebut his and Wheeler's positive oath to the contrary? The most that can be said is, that here has been a mistake; and nothing is more usual than for courts to rectify mistakes in order to prevent injustice. I admit this court will not interfere with the chancellor's rules of practice which he establishes, so far as they relate to forms, &c.

If an act be done by an *ex post facto* order, which affects the merits of a cause, and by which a party is to be condemned before he has an opportunity to put in his defence, it is the duty of this court to interfere. The Fulton Bank will not be the sufferers; the amount in controversy has been put out on interest by an order of the court of chancery; and the proofs are closed, except upon this separate answer of Beach. It does appear to me that justice and good faith require the reversing of the order of the chancellor. We ought not to do any thing that would in the least degree operate to shut out the real merits of this controversy.

On the question being put, *Shall the order of the chancellor appealed from be reversed?* the members voted as follows:

For *reversal*—Senators ARMSTRONG, BOUGHTON, BRONSON, MATHER, McCARTY, OLIVER, and WARREN—7.

For *affirmance*—Chief Justice SAVAGE, Mr. Justice SUTHERLAND, Senators ALLEN, CONKLIN, DEITZ, GERE, HUBBARD, McLEAN, REXFORD, SHERMAN, THROOP, and WOODWARD—12.

Whereupon the order of the chancellor was *affirmed*, with costs to be paid by the appellants.